OPINION OF THE COURT
Jeremiah J. Moriarty, J.
Prior to August 15, 1978, these claimants were the owners in fee of 85 ± acres of land in the Town of Harmony, Chautauqua County, State of New York. In a proceeding entitled Watts Flats Wetlands, Project Q-FWL, Map No. 9745, Parcel 40.15, the New York State Department of Environmental Conservation appropriated the entire fee to the claimants’ property.
It appears from the moving papers, and it is not disputed, that on or about April 4, 1978, pursuant to ECL 3-0305, an agreement for advance payment was entered into between the claimant Millicent Voorhis and the People of the State of New York, by and through the Commissioner of Environmental Conservation, whereby the commissioner offered to the owner the amount determined by him to be the value of the property. The form, is standard and routine in all respects except one, in paragraph 10 thereof it states: “Claimant will retain oil and gas rights.”
*957 However, when the appropriation map was filed in the Chautauqua County Clerk’s office on August 15, 1978, it did not reserve the oil and gas rights to the claimants, and those rights were therefore appropriated. Based upon the documents before the court on this motion, it clearly appears that the Department of Environmental Conservation intended to preserve the mineral rights to the claimants. After service upon them of the notice of appropriation, they served and filed a claim with the clerk of this court for the value of the appropriated land, including the mineral rights.
It further appears from the moving papers that representatives of the Department of Environmental Conservation and the New York State Department of Law tried, but have not succeeded, in resolving the problem.
The State now moves pursuant to section 9 of the Court of Claims Act and section 505 (subd [C]) of the Eminent Domain Procedure Law (EDPL) to settle title to the appropriated property, and for an order amending the map and description of the lands to be acquired, nunc pro tune, to indicate that title to the oil and gas rights remains with the claimants. Counsel for the claimants did not appear on the return date of the motion, nor file any papers in opposition thereto. We are advised by the Assistant Attorney-General that the claimants’ counsel acquiesces in the relief sought. Aside from that, the court has no indication of the claimants’ posture.
It appears that the interest of both parties would be served by this court granting the relief that is applied for; however, it is our conclusion that we do not have the authority to do so.
EDPL 505 (subd [C]) confers jurisdiction upon this court to determine questions relating to the title to appropriated property. This authority cannot be construed to grant us power to divest title once it is firmly and lawfully vested. A study of the statutes and the case law compels the conclusion that title to the mineral rights of the claimants’ property vested in the State of New York upon the filing of the appropriation map in the Chautauqua County Clerk’s office. (EDPL 402, subd [A], par [3]; Buf *958 falo Val. Realty Co. v State of New York, 273 NY 319; Queensboro Farm Prods, v State of New York, 6 Misc 2d 445, affd 5 AD2d 967, affd 5 NY2d 977; see, also, 2 Nichols, Eminent Domain [3d ed], § 6.12, and the authorities cited in note 4; 17 Carmody-Wait 2d, NY Prac, § 108:102.)
Although the State has the power to reconvey title to property it appropriated and subsequently determined to be in excess of its needs (see, generally, McKinney’s Cons Laws of NY, Book 16A, EDPL 406, and the case notes thereunder; cf. ECL 3-0305, subd 11), it cannot accomplish this result unilaterally, nor by an order of this court. (Minesta Realty Co. v State of New York, 26 AD2d 592; Queensboro Farm Prods, v State of New York, supra; Levin v State of New York, 56 Misc 2d 510.)
The apparent and most reasonable solution to an inadvertent or mistaken appropriation is a reconveyance to the former owner. It is appropriate to observe at this point that such a seemingly simple solution is probably incapable of accomplishment because of the bureaucratic and governmental roadblocks. However, the case law has strictly adhered to the rule that an appropriation map cannot be amended subsequent to its filing in the office of the county clerk because title to the property vests simultaneously with the filing, and the condemnor cannot thereafter change its mind. (Kahlen v State of New York, 223 NY 383, 390; Wolfe v State of New York, 22 NY2d 292; see, also, Vedder v State of New York, 30 AD2d 987.)
While this may appear to provide unnecessary protection to the claimants in the situation at bar, there is ample justification for the rule. Once the State has exercised its right of eminent domain, the former owner must be afforded the protection of knowing exactly what the State acquired. (Wolfe v State of New York, supra; Terrace Hotel Co. v State of New York, 19 NY2d 526; Vedder v State of New York, supra.) It is not difficult to envision the myriad problems that would be presented if the State were able to retract this appropriation by any unilateral device.
*959 The inference this court draws from the facts and information before it is that this is a situation where both sides would prefer to “undo” the appropriation, and return to the status quo rather than risk the uncertainties of court determined damages, or where compensation in any amount would not be adequate for an intangible value. It is our suggestion that the State and the claimants arrange a simple transfer accompanied by a release of any claim for damages.
Having determined that this court lacks the power to grant the relief requested, this motion is denied.